UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

September 30, 2010

Tracey N. Pate, Esq.
Disability Associates LLC
1226 Race Road Suite B
Baltimore, MD 21237

Allen F. Loucks, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Cynthia Neely v. Michael J. Astrue, Commissioner of Social Security, PWG-09-523**

Dear Counsel:

Pending by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Neely's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Paper Nos. 11, 15, 25). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion, and GRANTS the Plaintiff's Alternative Motion for Remand.

Ms. Neely ("Claimant") applied for DIB and SSI on December 5 and December 28, 2005, respectively, alleging that she was disabled since February 2, 2002, due to heart problems, depression, memory problems, anxiety, sleep apnea, asthma, allergies, diabetic neuropathy, back and sciatic nerve problems, arthritis in her knees, hips, fingers and GERD. (Tr. 25, 61, 78, 498). Her claims were denied initially, and upon reconsideration. (Tr. 48-53). After a hearing on October 3, 2007, before the Honorable Judith A. Showalter ("ALJ"), the ALJ denied Ms. Neely's claims and concluded in a decision dated

January 1, 2008, that her asthma, diabetes mellitus, obesity, depression, and anxiety were "severe" impairments[1] as defined in the Regulations, but that they did not meet, or medically equal, any of the Listed Impairments. (Tr. 25-33). The ALJ also found that Claimant retained the residual functional capacity ("RFC") to perform a range of light work. (Tr. 33). Based on her RFC, the ALJ found that Claimant could not perform any of her past relevant work ("PRW"). (Tr. 39). After receiving testimony from a vocational expert ("VE"), the ALJ concluded that work existed in the national and local economies in significant numbers which Ms. Neely could perform as a non-postal service mail clerk and dispatcher.(Tr. 40). Accordingly, the ALJ found that Claimant was not disabled. (Tr. 23-41). On January 1, 2009, the Appeals Council denied Ms. Neely's request for review, making her case ready for judicial review. (Tr. 4-6). Ms. Neely raises several arguments in support of her contention that the ALJ's decision is not supported by substantial evidence. For the reasons that follow, I agree and will remand this case for further proceedings in accordance with this Memorandum.

Ms. Neely argues that the ALJ failed to analyze properly all the medical evidence in determining whether she met or equalled a Listing at step three and in determining her RFC and her ability to work at steps four and five. She also argues that the ALJ improperly rejected the opinions of her treating source who was a Certified Registered Nurse Practitioner ("CRNP"). *See* Plaintiff's Memorandum, pp. 11-19. The Commissioner argues that the findings at steps three, four and five are supported by substantial evidence, and that the ALJ properly rejected the opinions of Claimant's CRNP. *See* Defendant's Memorandum, pp. 7-19.

The primary issue in this case is whether Ms. Neely meets or equals Listing 3.00 *Asthma*. Specifically, Listing 3.03B *Asthma* is at issue, which states:

> B. Attacks(as defined in 3.00C)\*, **in spite of prescribed treatment** and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an

---

[1] The ALJ also found however that her sleep apnea, migraine headaches, knee impairment, hypertension, and GERD were not "severe" impairments. (Tr. 28).

2

> evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.
> *3.00C. Attacks of asthma [are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.]
> 20 C.F.R. Pt. 404, Subpt.P. App 1.(emphasis added)

The ALJ rejected the notion that Claimant met the Listing and stated:

> [I]t cannot be disputed that the claimant sought medical attention for her asthma on a number of occasions at the hospital emergency room and with Ms. Reese. **However she did so because she was using the emergency room and her primary care physicians as a substitute for her prescribed treatment once she lost her health insurance.** Please see the list below addressing each of the episodes indentified by claimant's representative as an asthma exacerbation and how it corresponded to the claimant's compliance with her treatment plan. Some individuals may continue to experience severe asthma attacks despite their prescribed treatments and their adherence to the plan. These are the individuals that may fall under listing 3.30B. **The listings are not meant to allow an individual to simply stop taking their medication and then qualify for disability because they do not comply with their physician's treatment plan.** The Listings are provided to identify disabled individuals through the extreme severity of their disease process. Individuals who do not have a disease process that meets a listing must be evaluated through the remaining steps of the sequential evaluation process. The claimant falls in this is category. (Tr. 31)(emphasis added).

The ALJ's decision listed 11 different occasions where Claimant had exacerbations and sought medical attention between February 2005 and September 2007.(Tr. 31). Of the 11 attacks listed, the ALJ found that Claimant only had a total of four "acute exacerbations occurring despite prescribed treatment" over the 2 year period-- three of which occurred in 2005. The Listing

3

requires six in a year. However as the Claimant pointed out in her Memorandum --and the Commissioner now acknowledges-- this is not an accurate reflection of the record.

There was at least one additional acute exacerbation that took place in 2005, and it was a hospital admission on April 12-13, 2005. According to the Listing[2], this admission would count as two additional attacks-bringing the number of attacks in 2005 to at least 5. In her decision the ALJ did not count this attack and incorrectly stated that Claimant was "not taking medication". The hospital notes however reflect that Claimant was taking her nebulizer treatments when this exacerbation occurred. (Tr. 31, 171). The Commissioner acknowledges this error, but argues it is harmless, and that Ms. Neely would still not meet a listing as she would still not have six episodes. However whether one meets-- **or medically equals**-- a listing is not a determination for this Court to make, rather it is for the ALJ. This evidence was not properly considered I am not able to say the ALJ's decision at step three is supported by substantial evidence.

Further troubling, and another reason why I am not able to say the ALJ's decision is supported by substantial evidence, is the ALJ's unsupported characterization of Ms. Neely as person who would "**simply stop taking their medication and then qualify for disability because they do not comply with their physician's treatment plan".** (Tr. 31)(emphasis added). As Claimant testified and the medical records state, Ms. Neely at times had no medical insurance and therefore had difficulty maintaining her treatment plan.(Tr. 334,387,525). Non-compliance with treatment may be justified when one has insufficient resources to obtain the medical treatment that may help them. *Gordon v. Schweiker*, 725 F.2d 231, 237 (1984). Likewise Social Security Ruling "SSR" 82-59 provides that Claimant's are to be provided with an opportunity to show justifiable cause for failure to follow prescribed treatment. While normally SSR 82-59 only applies after a finding of disability has been made, in certain cases where ALJ has considered non-compliance as part of process finding plaintiff was not disabled, as opposed to determining credibility, courts have determined it does apply and have required the ALJ's afford Claimant's the procedural safeguard standards. See *Grubb v. Apfel,* 2003 WL 23009266 (S.D.N.Y.) citing, *Ibarra v. Commissioner*, 92 F. Supp.2d 1084, 1087 (D. Or.

---

[2] Each in patient hospitalization for longer than 24 hours for control of asthma counts as two attacks.

4

2000); *Sharp v. Bowen*, 705 F. Supp. 1111, 1123-1125 (W.D. Pa. 1898). It appears that in this case the ALJ relied on non-compliance in determining that Ms. Neely was not disabled as opposed to simply determining her credibility. For all of these reasons, I am not able to say the ALJ's findings at step three are supported by substantial evidence.

Even if the ALJ's findings at step three were supported by substantial evidence, I am still not able to affirm the ALJ's decision in this case.

The Court finds that the ALJ erred at steps four and five of the sequential evaluation in evaluating Ms. Neely's mental RFC and in presenting hypotheticals to the VE. The ALJ failed to discuss whether he considered properly all of the evidence in determining Claimant's RFC. The ALJ found Ms. Neely's RFC was as follows:

> "She could perform simple, unskilled, non-production pace, light work except that she could only sit for 6 hours and stand or walk for 6 hours in an 8 hour day, lift 20 pounds occasionally, 10 pounds frequently and she could occasionally climb stairs or ramps, kneel, crouch, crawl, and balance but could never climb a ladder, rope, or scaffold and should avoid all temperature extremes, fumes, gases, odors, poor ventilation, heights and hazardous machinery." (Tr. 33).

The ALJ documented her specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of §416.920a[3].(Tr. 20). However the ALJ's discussion of Ms. Neely's mental limitations at steps two and three was not an RFC assessment[4], and did not satisfy the ALJ's

---

2 The ALJ found that Ms. Neely had the following limitations: "moderate" limitations in activities of daily living; "moderate" limitations in social functioning; "moderate" limitations in ability to concentrate; and she experienced "no" episodes of decompensation. (Tr. 32).

3 The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "**An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work related capacities** that may be affected by mental disorders

5

duties at step 4 of the sequential evaluation. SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria **are not an RFC assessment** but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF**. SSR 96-8p (1996 WL 374184, *4(S.S.A.)).(Emphasis added).

Surprisingly, the ALJ referenced the above cited language in her decision.(Tr. 33). However the ALJ's RFC analysis did not include any of the required detailed findings. Rather, the ALJ stated, in a conclusory fashion, that Ms. Neely could perform "simple, unskilled, non-production pace." (Tr. Id.) This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart, 121 Fed. Appx. 833 (10th Cir. 2005)*(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required).

A Mental Residual Functional Capacity Assessment "MRFCA" was completed by the state agency physician, Dr. Oidick on April 21, 2006. Dr. Oidick stated that Claimant was "moderately" limited in her abilities to:
  1) maintain attention and concentration for extended periods;
  2) complete a normal work-day without interruptions from psychologically based symptoms and **to perform at a consistent pace without an unreasonable number and length of rest periods**. (Tr. 109)(emphasis added).

---

**when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment.**" *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

6

The RFC assessment **must always consider and address medical source opinions.** If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p (1996 WL 374184, *7) (S.S.A.))(emphasis added). The ALJ did not include the last highlighted portion of Dr. Oidick's assessment in her summary of this evidence. This evidence was not discussed by the ALJ-other than in a summary fashion and since the ALJ did not include the last portion of Dr. Oidick's function-by-function assessment described in SSR 96-8p[5 in]--the undersigned has no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence supports, or conflicts with, the ALJ's finding regarding Ms. Neely's RFC. All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)). According to Social Security Ruling ("SSR") 96-8p, the mental activities required by competitive, remunerative, unskilled work include:

> Understanding, remembering and carrying out simple instructions.
> Making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions.
> **Responding appropriately** to supervision co workers and **usual work situations dealing with changes in the work setting**.

(SSR 96-8p 1996 WL 374184 at *6)(Emphasis added).

The above listed limitations found by Dr. Oidick are clearly relevant to unskilled work, but this evidence was not properly discussed by the ALJ in her decision, and more importantly, these precise limitations were not included in the hypotheticals presented to the VE. (Tr. 546-548).

Simply stated, it is not clear from her decision whether the ALJ properly evaluated Ms. Neely's impairments at the fourth or fifth step of the sequential evaluation. *See Baker v. Chater*,

---

[4] SSR 96-8p, in relevant part, states: Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case.(1996 WL 374184, *3 (S.S.A.))

7

957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review).

Even were I to assume, for argument's sake, that the ALJ adequately evaluated Claimant's mental RFC, a remand would still be required since I also find the ALJ's basis for rejecting the opinions of Claimant's treating Certified Registered Nurse Practitioner("CRNP"), Ms. Julie Henne-Reese, (sometimes referred to as "Ms. Reese") is not supported by substantial evidence.

The ALJ found that the opinions of Ms. Reese in Exhibits 12, 13, 22 and 23-F were not entitled to "any significant weight". (Tr. 38). The ALJ's rationale was:

> [M]s. Reese does not have a specialty or area of expertise in pain management, mental health, endocrinology, pulmonary medicine, or neurology. While the claimant received the bulk of her prescribed medicines from Ms. Reese**, the record is replete with examples of the claimant's ongoing non-compliance despite Ms. Reese's efforts to remind her about the importance of continuing to take them**. The medical records as a whole reveals that Ms. Reese spent a great deal of time coaching the claimant about taking her medications and following up with the emergencies that arose when she did not. **While Ms. Reese may have been able to manage the claimant's medical care in general, the record does not reflect that she was able to provide any more care than simply reacting to the Claimant's latest crisis**." (Tr. 38-39)(emphasis added).

There is no evidence in the record that would support the ALJ's speculation that Ms. Reese was simply "reacting to a crisis" as opposed to her professional judgment when she rendered medical assistance or, more importantly, when she completed her reports[3] which support greater limitations than those found by the ALJ. Such speculation on the part of the ALJ is improper. *See Hughes v. Barnhart,* 117 Soc. Sec. Rep. Serv. 181, (D. Kan 2007)*(citing McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002));*see also Foxman v. Barnhart*, 157 Fed.

---
[3] The limitations found in Ms. Reese's reports were presented to the VE in a hypothetical by Claimant's counsel. The VE responded that no work existed for such an individual. (Tr. 550-551).

Appx. 344, 347, 2005 WL 3150524 (2nd Cir. 2005)(unpublished opinion).

      The ALJ acknowledged Ms. Reese's opinions, but rejected them on a basis that inaccurately describes the factual record. Contrary to what the ALJ stated, the record contains numerous pages of detailed treatment notes from Ms. Reese's office where there are several notations of Ms. Neely losing her insurance and her inability to pay for medications, as well as notations of her problems with depression, hypertension, breathing and exacerbations --while she was taking medications. (Tr. 304, 315, 380, 384, 398). The undersigned finds only 3 notations of Ms. Reese discussing "compliance" with her patient in the two and a half years that she treated Claimant. This hardly supports a finding that it is a record replete with the non-compliance, as the ALJ described. (Tr. 379, 391, 397). Therefore I am not able to say the ALJ's rejection of Ms. Reese's opinions is supported by substantial evidence.

      Accordingly, I am unable to say that the ALJ's analysis with respect to Ms. Neely's impairments and the resulting RFC are supported by substantial evidence and the case will be remanded. For the above reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings in accordance with the foregoing Memorandum. A separate Order shall issue.

Dated: 9/30/10

                                         _____/s/_____
  &nbsn;                                      Paul W. Grimm
                                         United States Magistrate Judge